## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46172

| | | |
|---|---|---|
| RICHEL FAMILY TRUST, by Darleen Sheldon, Donald Richel and Marla Gray as Co-Trustees, | ) ) ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | Boise, April 2020 Term |
| | ) | |
| v. | ) | Opinion Filed: July 22, 2020 |
| | ) | |
| WORLEY HIGHWAY DISTRICT, a political subdivision of the State of Idaho; and JEANNE BUELL, | ) ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendants-Respondents | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Rich Christensen, District Judge.

The order of the district court is affirmed.

Scott L. Poorman, Scott L. Poorman, P.C., Coeur d'Alene, for appellants Richel Family Trust.

Susan P. Weeks, James, Vernon & Weeks, P.A., Coeur d'Alene, for respondent Worley Highway District.

Laura L. Aschenbrener, Witherspoon Kelley, Coeur d'Alene, for respondent Jeanne Buell.

---

STEGNER, Justice.

This case involves judicial review of a validation order issued by the Worley Highway District Board of Commissioners (the Highway District). The order validated Road No. 20 (also known as Sunny Slopes Road) across the Northwest and Northeast Quarters of Section 34, Township 47 North, Range 4 West, Boise Meridian, Kootenai County, Idaho. The purported road crosses properties owned by the Richel Family Trust (the Trust) and property owned by Jeanne Buell (Buell). The Trust does not contest the validation of the road in the Northwest Quarter of Section 34. However, the Trust requested judicial review of the validation of a portion of the road in the North*east* Quarter of Section 34. The district court affirmed the Highway District's validation order.

1

The Trust appeals the district court's judicial review and affirmation of the validation order. The Trust contends that the deed that purportedly conveyed the public right-of-way is void because it contains an insufficient description due to the loss of extrinsic evidence mentioned in the deed. Additionally, the Trust argues that many of the Highway District's factual findings and legal conclusions are not supported by substantial and competent evidence. Further, the Trust argues that if the Highway District's validation order is affirmed, it amounts to an unconstitutional taking under both the Idaho and United States constitutions. For the reasons set forth in this opinion, we affirm the district court's order in which it affirmed the Highway District's validation order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and the Land Involved.

The Trust owns approximately 280 acres of what is predominantly farmland in the north half of Section 34, Township 47 North, Range 4 West, Boise Meridian, Kootenai County, Idaho. Buell owns approximately forty acres of timberland located in the Southeast Quarter of the Northeast Quarter of Section 34. A public highway known as Road No. 20 (also known as Sunny Slopes Road)[1] enters the property owned by the Trust from the west, crosses the Northwest Quarter of Section 34 and then turns north at the eastern midline of the Northeast Quarter of Section 34. Attachment A to this opinion depicts the land owned by each party.

The current location of Road No. 20 in the Northeast Quarter of Section 34 is unclear. No road surface exists today in the Northeast Quarter of Section 34. After inheriting the property, Buell attempted to sell it. It was at this time that she noticed there was a gate at the end of Road No. 20 at the western edge of the Northeast Quarter of Section 34. During the validation hearing, Donald Richel, a trustee of the Richel Trust, testified that there was a trail across the Northeast Quarter of Section 34, but there was never a road.[2] Absent validation of Road No. 20 across the North*east* Quarter of Section 34, Buell would have no access to her property.

---

[1] This opinion will refer to the road as Road No. 20.

[2] During the Highway District's hearing, Buell testified that she believed that there had been at one time a road in the Northeast Quarter of Section 34. According to Buell, her predecessor in interest, Lorna Schieche, remembered a road in the Northeast Quarter. Schieche told Buell that sometime in 1952, the Richel family had erected a fence and the road was no longer there.

**B.  The History of Road No. 20 in Section 34.**

The purported creation of the public right-of-way in Section 34 involves two main actors: B.W. Briggs (Briggs) and George C. Danforth (Danforth). The Northwest Quarter of Section 34 was patented to Briggs in 1913, and the Northeast Quarter of Section 34 was patented to Danforth in 1916.[3] According to minutes from the Plummer Highway District Board of Commissioner's meeting on August 2, 1913, Danforth and several others petitioned for a public highway in Section 34, which the Plummer Highway District granted.

There are two relevant deeds to this appeal. On February 7, 1914, Danforth executed a Release of Damages and Deed to Right-of-Way (the Danforth Deed), purporting to convey a fifty-foot right-of-way known as "Road Number Twenty" to Kootenai County. The Danforth Deed conveyed a right-of-way in the Northeast Quarter of Section 34 from Station 1 to Station 12 according to "the field notes of the survey of the public road thereof, as made on the 11th to 14th days of October, A.D., 1913, by W.T. Shepperd." The Danforth Deed was recorded on April 11, 1918. However, the field notes and survey were not included with the deed when it was recorded. At the time of this appeal, neither the field notes nor the survey have ever been located.

On October 18, 1913, Briggs conveyed a fifty-foot-wide right-of-way known as Road No. 20 to the Plummer Highway District (the Briggs Deed). The Briggs Deed used almost identical language as the Danforth Deed, referencing field notes from a survey performed on October 11 through 14, 1913, by W.T. Shepperd. The survey and field notes were not recorded with the Briggs Deed. There are two relevant differences between the Briggs Deed and the Danforth Deed. First, the Briggs Deed transferred property in the Northwest Quarter of Section 34, while the Danforth Deed transferred property in the Northeast Quarter. Second, the Briggs Deed transferred property to the Plummer Highway District, while the Danforth Deed transferred property to Kootenai County. The Trust does not challenge the Briggs Deed.

**C.  Historical Documents Relating to the Location of Road No. 20.**

The Highway District relied on several historical documents during the validation proceedings. Those documents are summarized below.

---

[3] This date leaves a few questions unanswered. It is unclear how Danforth could deed this property before he received the patent to it. However, this issue was never raised by the parties and as a result we will refrain from addressing it in this forum. *ABK, LLC v. Mid-Century Ins. Co.*, 166 Idaho 92, 101, 454 P.3d 1175, 1184 (2019) (quotation omitted) (holding that this Court will not address an issue not addressed below).

In 1873, the Coeur d'Alene Indian Reservation was created and included the properties at issue on appeal. Several surveys dated August 1907 from the United States Surveyor General's Office showed existing roads that crossed the entire north half (including both the Northwest Quarter and the disputed Northeast Quarter) of Section 34.[4] The Kootenai County Road Book depicts a similar road across the north half of Section 34.[5] The road depicted in the 1907 surveys and the Kootenai County Road Book appear consistent with one another.

Further, there is a map of proposed roads prepared from surveys conducted in May, June, July, August, and September of 1913. This map included a proposed road in the same location as Road No. 20 running through the north half of Section 34. The map was delivered to the Superintendent and Special Disbursing Agent of the Coeur d'Alene Tribe. The Department of the Interior approved the roads across restricted reservation lands.

A January 31, 1914, maintenance report stated that maintenance, construction, or repair occurred on Road No. 20. However, the report only stated that Road No. 20 was located in Section 33. Nothing in that report mentioned a Road No. 20 being located in Section 34.

The Highway District also found that there were several sets of maps that depict a similar road through the Northeast Quarter of Section 34. First, a map from the Government Land Office shows the roads then currently maintained by the U.S. Bureau of Land Management. That map depicts a road which crosses through the north half of Section 34. That road is consistent with the other depictions of Road No. 20. Second, there are two sets of aerial maps from the 1930s. The Highway District argues that those aerial maps depict Road No. 20 in Section 34. However, the maps are blurry and difficult to interpret. Finally, there are two Metsker maps, one from 1939, the other from 1959, both of which depict a road across the Northeast Quarter of Section 34.

**D.      Course of Proceedings.**

In 2015, Buell petitioned the Highway District to conduct a validation proceeding on a portion of Road No. 20 located in Section 34. After a public hearing, the Highway District validated two portions of Road No. 20: a portion of Road No. 20 in the *Northwest* Quarter of Section 34, and a portion of Road No. 20 in the *Northeast* Quarter of Section 34.

---

[4] All of the parties cite to a 1905 survey from the Surveyor General. However, the record citation to that survey is a survey from 1907. This error is not explained by the parties. There is no 1905 survey in the record. It is assumed the parties' reference to a 1905 survey is a typographical error and that it should have referred to a 1907 survey.
[5]  The page from the Kootenai County Road Book is undated.

4

The Trust petitioned the district court for judicial review. The Trust only challenged the validation of the public right-of-way across the North*east* Quarter of Section 34. The Trust also moved to augment the agency record. The district court granted the Trust's motion to augment; however, rather than hear the new evidence itself, the district court remanded the case to the Highway District for it to reconsider its decision in light of the new evidence.[6]

The Highway District conducted a second validation hearing on June 28, 2017. Following that hearing, the Highway District entered amended findings of fact, conclusions of law and validation order on July 17, 2017. Although some of the factual findings were modified upon review of the new evidence, the Highway District still validated the two portions of Road No. 20 across both the Northwest and Northeast Quarters of Section 34.

The Trust again sought judicial review of the Highway District's validation of Road No. 20 across the Northeast Quarter. The case was back before the district court for oral argument on March 7, 2018. On April 18, 2018, the district court entered its memorandum decision and order on judicial review. In its memorandum decision, the district court noted that the Trust challenged several of the Highway District's factual findings. The district court concluded that the challenged factual findings were supported by substantial and competent evidence.

Additionally, the district court identified the central issue of the Trust's appeal as: "[W]hether the [Highway] District is able to validate a road where, after passage of more than 100 years, the available evidence would be insufficient to prove that the real property was initially effectively transferred." The district court noted that the Danforth Deed refers to a viewer's report and survey that were not included with the deed when it was recorded. Moreover, the field notes and survey have never been located. Although the district court recognized that without those documents the deed would ordinarily be insufficient, the district court ultimately concluded that a court evaluates the sufficiency of the transfer at the time of the grant and in light of enabling legislation. The district court held that the deed transferring the public right-of-way across the Northeast Quarter of Section 34 was sufficient at the time the conveyance was made. Consequently, the district court affirmed the Highway District's validation order. The Trust timely appealed.

---

[6] The district court also granted the Trust's motion to stay the validation order of Road No. 20 until the Board's new decision was entered.

## II.  STANDARD OF REVIEW

Before addressing the merits of this case we must determine what standard of review is applicable when a party appeals from the decision of a district court on review of a highway district or county board of commissioners' order regarding validation, vacation, or abandonment of a public right-of-way.[7] Idaho Code section 40-208 provides a standard for judicial review of a highway district's decision regarding abandonment and vacation or validation of highways. I.C. § 40-208. That statute provides, in relevant part:

> The review shall be conducted by the court without a jury. The court shall consider the record before the board of county or highway district commissioners and shall defer to the board of county or highway district commissioners on matters in which such board has appropriately exercised its discretion with respect to the evaluation of the public interest. As to the determination of highway or public right-of-way creation, width and abandonment, the court may accept new evidence and testimony supplemental to the record provided by the county or highway district, and the court shall consider those issues anew.

I.C. § 40-208(6).

From the plain language of Idaho Code section 40-208(6), the statute does not dictate the standard of review for subsequent appeals from the *district court*. This is because section 40-208(6) mandates the acceptance of new evidence and fact-finding on appeal, which would be an extraordinary practice for this Court to engage in on appeal. Accordingly, we conclude that the standard of review articulated in Idaho Code section 40-208 is not applicable to this Court.

When the statutory standard of review is not defined by the legislature this Court has held that it would apply the general standard of review for cases in which the district court acts in its appellate capacity. *See Idaho Historic Pres. Council, Inc. v. City Council of City of Boise*, 134 Idaho 651, 654, 8 P.3d 646, 649 (2000). In those cases, "this Court reviews [a] highway district's action independent of the district court's decision." *Galvin v. Canyon Highway Dist. No. 4*, 134 Idaho 576, 578, 6 P.3d 826, 828 (2000) (citing *Ferguson v. Bd. of Cty. Comm'rs for Ada Cty.*, 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986)). However, "we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Flying "A" Ranch, Inc. v. Cty. Comm'rs of Fremont Cty.*, 157 Idaho 937, 939–40, 342 P.3d 649, 651–52 (2015) (alteration in original) (quoting *Pelayo*

---

[7] Our prior articulations of the standard of review involving appeals from the decisions of district courts on review of a highway district or county board of commissioners are not helpful because we utilized a prior version of Idaho Code section 40-208, which contained a standard of review for this Court. In 2013, that version of the statute was modified by the legislature into the Idaho Code section 40-208 that exists today.

*v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013)). Further, this Court defers to the factual findings made below by either the highway district or district court unless they are unsupported by substantial and competent evidence. *Id.* at 940, 342 P.3d at 652.

"Statutory interpretation is a question of law over which this Court exercises free review." *Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (quoting *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012)).

### III. ANALYSIS

**A. While not all of the Highway District's factual findings are supported by substantial and competent evidence, there are sufficient findings that are supported by substantial and competent evidence to affirm the district court's decision.**

The Trust challenges several factual findings and conclusions. However, this Court will uphold findings of fact "unless they are unsupported by substantial competent evidence." *Flying "A" Ranch, Inc.*, 157 Idaho at 940, 342 P.3d at 652 (citing *Sopatyk v. Lemhi Cty.*, 151 Idaho 809, 813, 264 P.3d 916, 920 (2011)). Substantial and competent evidence is "relevant evidence that a reasonable mind might accept to support a conclusion." *Jensen v. City of Pocatello*, 135 Idaho 406, 412, 18 P.3d 211, 217 (2000) (citation omitted).

1. There is substantial and competent evidence to support the finding that a viewer's report was prepared and Road No. 20 was surveyed between October 11 and 14, 1913.

The Highway District found that "[b]etween October 11 to October 14, 1913, a viewer's report was prepared and Road No. 20 was surveyed." This finding of fact is supported by the following language in the Danforth Deed: "Whereas, a road fifty (50) feet in width, to be known as Road twenty (20), was surveyed on the 11th to 14th days of October A.D. 1913; by W.T. Shepperd[.]" However, at the time of this appeal neither the viewer's report nor the survey has been located.

Substantial and competent evidence supports the finding that a viewer's report was made and was specifically referenced in the deed. First, the Danforth Deed states that the right-of-way was intended "to pass as the same was *actually marked* upon the ground, and according to the field notes of the survey of the public road thereof, as *made* on the 11th to 14th days of October A.D. 1913[.]" (Italics added.) The statements are in the past tense, leading to an inference supporting the district court's conclusion that the survey and markings had already been made prior to the execution of the deed. This is "relevant evidence that a reasonable mind might accept to support a conclusion" that a viewer's report had in fact been made and that Road No. 20 had been surveyed.

7

*See Jensen*, 135 Idaho at 412, 18 P.3d at 217 (citation omitted). For that reason, there is substantial and competent evidence to support the Highway District's factual finding.

2. <u>Substantial and competent evidence supports the finding that Road No. 20 was included in the Kootenai County Road Book.</u>

The Highway District found "Road No. 20 was included in the Kootenai County Road Book which depicts accepted public roads." The Highway District relied on a page from the Kootenai County Road Book. This exhibit depicts a curving line passing across the north half of Section 34. The district court concluded that this finding was supported by substantial and competent evidence because the lines were labeled as roads, and the line approximately matches the other depictions of Road No. 20 contained in the record.

On appeal, the Trust seeks to cast doubt as to whether the Road Book page actually depicts Road No. 20. The Trust notes that the page is not dated and does not indicate if the line represents an existing or a proposed road, that the road is not labeled as Road No. 20, and that the page makes no reference to a survey performed in 1913. Further, the Trust cites *Homestead Farms, Inc. v. Board of Commissioners of Teton County*, 141 Idaho 855, 860, 119 P.3d 630, 635 (2005), for the proposition that even if the Road Book page depicted Road No. 20, it is immaterial because the inclusion of a road in a road book does not, by itself, create a public road. The Highway District responds, arguing that the road depicted aligned with other depictions of the road and an inference can be drawn that it represents an *existing* road if it is included in the Kootenai County Road Book records.

The factual finding that Road No. 20 was included in the Kootenai County Road Book is supported by substantial and competent evidence. The Road Book shows a road that crosses the north half of Section 34. This road is consistent with every other depiction of Road No. 20 in the record. Accordingly, the Highway District's finding is supported by substantial and competent evidence.

3. <u>Substantial and competent evidence supports the finding that Road No. 20 was maintained by the Plummer Highway District in 1914.</u>

The Highway District found that "[t]here was evidence in the minutes of Plummer Highway District from 1914 indicating Road No. 20 was maintained by Plummer Highway District." The document being referenced is the January 31, 1914, "Report to the Plummer Highway District . . . as to the Work, Construction, Maintenance and Repair of the Highways

8

within said District." That report states, in regard to Road No. 20, "[t]he road way is slashed 25 feet wide and made passable three-fourths of a mile in section 33[.]" The district court found that this finding was supported by substantial and competent evidence.

On appeal, the Trust does not appear to challenge this Highway District finding itself, but seeks to clarify that the 1914 report refers to maintenance performed in Section 33, not Section 34. Further, the Trust argues that these minutes may be used to infer that in January 1914, approximately a week before the Danforth Deed was executed, there was no mention of Road No. 20 extending into Section 34.

There is substantial and competent evidence to support the finding that Road No. 20 was maintained by the Plummer Highway District in Section 33. However, the finding is essentially immaterial to any conclusion regarding Road No. 20 in Section 34.

4. <u>Substantial and competent evidence supports the finding that "[o]n April 16, 1914, an approved plat of survey of proposed roads for the Plummer Highway District included Road No. 20."</u>

The Highway District found that on April 16, 1914, an approved plat of survey of proposed roads for the Plummer Highway District included Road No. 20. The plat of survey referenced is Agency Exhibit L. The district court found that the roads depicted in the map were consistent with all other depictions of Road No. 20. Further, the survey is certified by W.T. Shepperd, the same surveyor referenced in the Danforth Deed.

On appeal, the Trust argues that the surveyor's certificate describes the plat as a system of *proposed* roads made in May, June, July, August, and September of 1913. The Trust contends that the plat does not depict what W.T. Shepperd purportedly surveyed between October 11 and 14, 1913. The Trust argues that the roads depicted on the plat could be different from what was surveyed by W.T. Shepperd. Without the Shepperd field notes, the Trust contends, this Court cannot know whether Road No. 20 is actually depicted in the plat. The Highway District and Buell argue that the depiction of Road No. 20 in the plat is consistent with all other depictions of Road No. 20.

Review of the plat depicts a road that crosses the north half of Section 34, consistent with all other depictions of Road No. 20. While this Court cannot be certain that the road matches the survey later performed by W.T. Shepperd, the Highway District's finding may be gleaned from the evidence in the record. For example, the April 16, 1914, survey was certified by W.T.

Shepperd, the same surveyor mentioned in the Danforth Deed. This fact lends credence to the argument that the line depicted in the survey reflects the right-of-way conveyed by the Danforth Deed. Accordingly, this finding of fact is supported by substantial and competent evidence.

5. <u>Substantial and competent evidence supports the finding that the Department of Interior approved Road No. 20 in 1915, and that two maps show Road No. 20 as a public road in the Coeur d'Alene Indian Reservation.</u>

The Highway District found that "[i]n 1915, the Department of Interior approved Road No. 20 as a road allowed in restricted Indian lands. There are now two maps in the record showing Road No. 20 as a public road within the Coeur d'Alene Indian Reservation." The two maps referenced are the 1907 surveys through the Coeur d'Alene Reservation, and the map of proposed roads prepared from surveys conducted in May, June, July, August, and September 1913. A note on the map of proposed roads indicates that the document was approved by the Assistant Secretary of the Department of Interior. The district court concluded that this finding of fact was substantiated by the surveys alone.

Both maps show a similar road crossing the Northeast Quarter of Section 34. Further, both maps depict the road inside the Coeur d'Alene Indian Reservation. Accordingly, the finding of fact is supported by substantial and competent evidence.

6. <u>There is substantial and competent evidence to find that *one* set of aerial maps from the 1930s shows that Road No. 20 extended across the Northeast Quarter of Section 34.</u>

The Highway District found that "[t]here are now two sets of aerial maps from the 1930's [that] show Road No. 20 extending across the Northwest Quarter and the Northeast Quarter of Section 34." One set of aerial maps was included as Exhibit N and N-1. The other set of aerial maps appears to reference Attachment 8 of Exhibit O. The district court found that Exhibits N and N-1 were blurry and no conclusions could be drawn from them. The district court modified the finding to conclude that only one set of aerial maps showed Road No. 20 extending across the Northwest and Northeast Quarters of Section 34.

After reviewing Exhibits N and N-1, it is hard to discern anything from those maps. They are blurry and it is difficult to distinguish anything, let alone the location of Road No. 20. As for the other exhibits, it is difficult to make out whether a road appears in the Northeast Quarter of Section 34. There appears to be a light marking on the map that could indicate a path or trail. Therefore, the aerial photographs support the amended finding that *one* set of aerial maps from the 1930s depicts a road crossing the Northeast Quarter of Section 34.

10

7. Substantial and competent evidence supports the finding that there are two Metsker maps that depict Road No. 20 consistent with other maps in the record.

The Highway District found "[t]here are now two Metsker maps in the record that identify Road No. 20 as a road within Section 34 consistent with the Plummer Highway District road maps and the Kootenai County Road Book map. One was from 1939 and the other was from 1959." The district court held that this finding was supported by substantial and competent evidence.

The two maps are depicted below:

1939 Metsker Map.

1959 Metsker Map.




Both maps depict a road crossing the north half of Section 34, including the Northeast Quarter. While the 1959 Metsker map is more difficult to read, it appears that a road crosses a similar path as the 1939 Metsker map. Further, when comparing these maps to the Plummer Highway District road maps and the Kootenai County Road Book map, each map seems to depict a similar road crossing the north half of Section 34. Accordingly, this finding of fact is supported by substantial and competent evidence.

8. Substantial and competent evidence supports the finding that no road surface exists in the Northeast Quarter of Section 34.

The Highway District found that "[n]o road surface exists today in the Southeast [sic] Quarter of Section 34."[8] The Trust does not challenge this finding other than to note that there was

---

[8] In its amended findings, the Highway District also found that "Worley Highway District's road map does not include this portion of the right-of-way in its map because Worley Highway District was unaware until this proceeding that a portion of its roads originated from roads originally within the Plummer Highway District." No party disputes or discusses this additional finding.

11

a typographical error, and instead should read Northeast Quarter of Section 34. We agree. With this change, from Southeast to Northeast, the finding is supported by substantial and competent evidence. There is evidence in the record that Buell cannot currently access her property because there is no road extending beyond the Northwest Quarter of Section 34.

9. Substantial and competent evidence supports the finding that Road No. 20 was never formally abandoned.

The Highway District found that there was no evidence that a formal abandonment of Road No. 20 in Section 34 had occurred. The district court noted that the Trust argued that while there had never been a formal abandonment of Road No. 20, there was ample evidence to support that Road No. 20 *had in fact* been abandoned (if it ever existed in the first place). However, the district court concluded that there was evidence to support the finding that no formal abandonment proceedings ever occurred.

The Trust makes the same arguments on appeal as it did before the district court. We conclude that there is nothing in the record to suggest that any formal abandonment of Road No. 20 occurred. This Court has previously rejected a similar argument put forth by the Trust. A road cannot be informally abandoned by implication. *Floyd v. Bd. of Comm'rs of Bonneville Cty.*, 137 Idaho 718, 728, 52 P.3d 863, 873 (2002). Instead, there must be a formal abandonment proceeding. *Id.* Accordingly, the district court's finding that Road No. 20 was never abandoned is supported by substantial and competent evidence.

10. Substantial and competent evidence supports the finding that Road No. 20 provides the only public access to Buell's property.

The Highway District found that "Road No. 20 is the only public access to real property owned by Jeanne Buell in the Northeast Quarter of Section 34." The district court found that the finding of fact was supported by substantial and competent evidence.

On appeal, the Trust argues that because there was never a validly created public right-of-way in the Northeast Quarter of Section 34, there was *never* any public access to the Buell property. The Highway District argues the factual finding did not presume the validity of the road; rather, the Highway District merely found that the road depicted traversing the Northeast Quarter Section of 34 provided the only access to Buell's property and that other evidence in the record supported the conclusion that the road was public.

12

Significant evidence in the various maps in the record establishes that a road existed that crossed the Northeast Quarter of Section 34. Based on those maps, that road would be the only public access to Buell's property. Without that road, Buell has no public access to her property. Accordingly, this finding of fact is supported by substantial and competent evidence.

11. The record does not support the finding that Danforth executed a deed in favor of the Plummer Highway District. However, there is no need for the case to be reversed.

The Highway District found that the Danforth Deed conveyed a right-of-way to the Plummer Highway District. The district court concluded that the finding was supported by substantial and competent evidence because the deed stated that the owners of the land described "do hereby grant and convey . . . to the Plummer Highway District" the fifty-foot right-of-way.

However, both the Highway District and the district court failed to recognize that there are two separate deeds conveying portions of Road No. 20. First, there is the Danforth Deed, which states that Danforth "does hereby grant and convey . . . to *Kootenai County*, Idaho" a public right-of-way in the Northeast Quarter of Section 34. (Italics added.) The other deed—the Briggs Deed—states that Briggs and several others "hereby grant and convey . . . to the Plummer Highway District" a right-of-way in the Northwest Quarter of Section 34.

The Highway District and the district court both apparently confused the Danforth Deed with the Briggs Deed. The Danforth Deed conveyed the right-of-way to *Kootenai County*, not the Plummer Highway District. Accordingly, this finding of fact is not supported by the evidence in this record.

While we agree with the Trust that there is no clear evidence in the record to establish that the Worley Highway District is Kootenai County's successor in interest for this conveyance, this does not necessitate reversal. All of the evidence in the record demonstrates that Danforth intended to convey a public right-of-way to the appropriate political subdivision, the Plummer Highway District. The record establishes that prior to the execution of the Danforth Deed, Danforth and several others petitioned the Plummer Highway District to establish a public highway. The Plummer Highway District granted the petition. Two months after the petition was granted, a survey of the road was conducted on October 11 through 14 by the order of the board of highway commissioners.

Regardless of the language in the deed, "[t]he commissioners of a highway district have exclusive general supervision and jurisdiction over all highways and public rights-of-way within

13

their highway system[.]" I.C. § 40-1310. "The highway district has the power to receive highway petitions and lay out, alter, create and abandon and vacate public highways and public rights-of-way within their respective districts under the provisions of sections 40-202, 40-203 and 40-203A, Idaho Code." *Id.* As noted, the record amply demonstrates that a public right-of-way existed within the Northeast Quarter of Section 34. Additionally, Section 34 is within the jurisdiction of the Highway District. Accordingly, the Highway District had proper jurisdiction and authority to initiate the validation proceedings. *See* I.C. § 40-203A (providing that a resident may petition the highway district that has jurisdiction of the highway system to validate a public right-of-way).

**B.** **This Court affirms the Highway District's finding regarding public interest because the Trust does not argue that the Highway District abused its discretion in finding that there is a public interest in validating the road.**

The Highway District found that "the public interest is served by the validation of Road No. 20 in both quarters of [the north half of] Section 34. It is in the public interest not to landlock parcels by abandonment of public right of way." The Trust argues that the second sentence is irrelevant because this case does not involve a petition to abandon a public right-of-way. The Trust further argues that the public interest is irrelevant because there is no public right-of-way to be validated. The Highway District responds, arguing that the Highway District has a statutory obligation to determine the public interest under Idaho Code section 40-203A.

According to the standard of review utilized for judicial review of a validation proceeding, this Court defers to the Highway District's determination of the public interest as a matter within the agency's discretion. I.C. § 40-208. The Trust does not provide any argument that the Highway District abused its discretion in reaching its determination. Accordingly, we affirm the Highway District's finding regarding the public interest. *See State v. Kralovec*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017) (citation omitted) (holding that failure to provide cogent argument regarding how a court abused its discretion is fatal to an abuse of discretion claim).[9]

---

[9] In *State v. Jeske*, 164 Idaho 862, 870, 436 P.3d 683, 691 (2019), this Court clarified that the Court's main concern in its holding in *Kralovec* was "whether an appellant's arguments are supported with relevant argument and authority." This case presents the concern identified in *Kralovec* because the Trust provided no argument or authority regarding whether the Highway District abused its discretion in concluding that the public interest would be served by validating the road.

**C.** **Idaho Code section 40-203A gives the Highway District the authority to review extrinsic evidence and to validate a road.**

The Highway District, after considering the factual findings discussed above, made the following legal conclusions after the second validation proceeding:

1. The location of the deeded right-of-way cannot be exactly determined due to loss or destruction of the original survey field notes of the public right-of-way.

   . . . .

3. The evidence presented supports validation of Road No. 20 as a right of way in the Northeast Quarter of Section 34 based on:

   a. Plummer Highway District Records;

   b. The Release of Damages and Deed of Right of Way executed by George and Zannia Danforth;

   c. A series of maps ranging from 1903 to 2005 showing Road No. 20 in the Northeast Quarter of Section 34;

   d. A plat of Plummer Highway District roads including Road No. 20, and showing the initial point, turning points, and terminus point of Road No. 20; and

   e. Aerial photographs showing a well-worn path consistent with the road survey line from the Plummer Highway District road maps.

The district court recognized the central issue on judicial review was "whether the [Highway] District is able to validate a road where, after passage of more than 100 years, the available evidence would be insufficient to prove that the real property was initially effectively transferred." The district court noted that the Danforth Deed referred to a viewer's report and survey notes that have been lost. Although the district court recognized that without those documents the deed would be insufficient, the district court ultimately concluded that "the court evaluates the sufficiency of the deed at the time of the grant, and the evidence in the record strongly infers [sic] that the viewer's report and survey notes accompanied the deed and sufficiently identified the property conveyed at the time the deed was executed."

Additionally, the district court noted that the legislature had created "a distinct mechanism . . . wherein a highway district may evaluate whether a highway or public right-of-way was previously established and may remove any remaining doubt surrounding its establishment." The district court relied on Idaho Code section 40-203A, which provides that highway districts may validate a road when "through omission or defect, doubt exists as to the legal establishment . . . of a highway or public right-of-way," I.C. § 40-203A(1)(a), and when "the location of the highway

15

or public right-of-way cannot be accurately determined due to . . . loss or destruction of the original survey . . . ." I.C. § 40-203A(1)(b).

On appeal, the Trust argues that the Danforth Deed contains an insufficient legal description because the survey and the field notes referenced in the deed cannot be located, rendering the deed void and unenforceable. Further, the Trust contends that the Highway District relied on extrinsic evidence not referenced in the deed in violation of Idaho law. Based on these arguments, the Trust asserts there was no public right-of-way to be validated.

The Highway District responds, arguing that the sufficiency of the deed is reviewed *at the time of its delivery*. The Highway District asserts that because there is evidence that supports that the deed was sufficient at the time of delivery, the deed is not void. Accordingly, the Highway District contends that it properly validated Road No. 20 pursuant to Idaho Code section 40-203A.

Buell contends that Idaho Code section 40-203A allows the Highway District to consider all extrinsic evidence to validate a road, not just the extrinsic evidence referenced in the deed. Further, Buell argues that the validation statute takes precedence over the statute of frauds.

Under Idaho law, a conveyance of real property must be in writing. I.C. § 9-503; *see also* I.C. § 55-601. "In addressing Idaho Code section 55-601, this Court has established that 'it is fundamental that a written instrument purporting to convey real property must contain a sufficient description of the property.'" *David & Marvel Benton Tr. v. McCarty*, 161 Idaho 145, 151, 384 P.3d 392, 398 (2016) (quoting *Worley Highway Dist. v. Kootenai Cty.*, 98 Idaho 925, 928, 576 P.2d 206, 209 (1978)). A deed that does not contain a sufficient description of the property cannot convey title to that property. *Id.*

"In order to be enforceable, 'a description of real property must adequately describe the property such that it is possible for someone to identify "exactly" what property the seller is conveying to the buyer.'" *Id.* (quoting *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009)). Generally, Idaho case law "permits a party to ascertain a property description from extrinsic evidence *only* when the contract or deed references the extrinsic evidence." *Ray*, 146 Idaho at 630, 200 P.3d at 1179 (italics added). "The statute of frauds does not permit [a party] to supplement the real property description in the contract with . . . extrinsic evidence." *Id.*

However, the Idaho Legislature has created an explicit exception to rigid property law requirements when a validation proceeding is involved. The statute allows a highway district to review extrinsic evidence when determining the establishment and location of a public right-of-

16

way. I.C. § 40-203A. Idaho Code section 40-203A gives a highway district authority to validate a public right-of-way in circumstances in which, "through omission or defect, doubt exists as to the legal establishment or evidence of establishment of a highway or public right-of-way[.]" *Id.* Further, the validation statute recognizes that a validation proceeding may be appropriate when "the location of the highway or public right-of-way cannot be accurately determined due to . . . *loss or destruction* of the original survey of the highways or public rights-of-way[.]" *Id.* (italics added). Finally, Idaho Code section 40-203A provides that during validation proceedings, "the commissioners shall consider *all information* relating to the proceedings and shall accept testimony from persons having an interest in the proposed validation." I.C. § 40-203A(2)(e) (italics added). Accordingly, the district court correctly concluded that the legislature created "a distinct mechanism . . . wherein a highway district may evaluate whether a highway or public right-of-way was previously established and may remove any remaining doubt surrounding its establishment." This mechanism allows a highway district to "consider all information[,]" including extrinsic evidence, to determine the establishment of a public right-of-way. I.C. § 40-203A(2)(e).

The circumstances of the public right-of-way in this case clearly fit within the language of Idaho Code section 40-203A. First, "through omission or defect, doubt exists as to the legal establishment" of Road No. 20. There are questions about the sufficiency of the description because the field notes and surveys were omitted from the recording of the Danforth Deed. Further, the location of the public right-of-way cannot be determined because the original survey of the public right-of-way has been lost.

Consequently, the Highway District appropriately considered all information relevant to the proceeding in order to determine the establishment of Road No. 20 because there was doubt as to both its establishment and location. With this conclusion in mind, we turn to whether the Highway District's conclusions that were drawn from a review of the extrinsic evidence are supported by substantial and competent evidence.

Ultimately, we conclude that the numerous documents relied on by the Highway District are sufficient to support the existence of a public right-of-way for Road No. 20 through the Northeast Quarter of Section 34. The record reflects that Danforth petitioned for a public right-of-way for Road No. 20, which was granted by the Plummer Highway District Commissioners. The Danforth Deed establishes the general location of the public right-of-way in the Northeast Quarter of Section 34, Township 47 North, Range 4 West, Boise Meridian, Kootenai County, Idaho.

17

Further, many historical maps corroborate that Road No. 20 was located in the Northeast Quarter of Section 34 in the same general location. Accordingly, we affirm the district court's order affirming the validation order of Road No. 20.

**D.      The Trust cannot establish an actual taking.**

On appeal, the Trust argues that Idaho Code section 40-203A, as interpreted and applied by the district court below, allows an unconstitutional taking of private property for a public purpose without just compensation. The Trust contends that the district court's interpretation of Idaho Code section 40-203A allowed the Highway District to essentially condemn a public right-of-way for Buell without any compensation to the Trust for the taking.

The Highway District contends that the Trust misperceives the district court's interpretation. The Highway District argues that the district court did not hold that a highway district could acquire property it did not already hold for the public by means of a validation proceeding pursuant to Idaho Code section 4-203A. Rather, the district court found that the deed legally conveyed the property and therefore there was no property owned by the Trust to "take."

Buell argues that the Trust improperly asserted an unconstitutional taking in an action for judicial review. Buell contends that judicial review proceedings are limited to review of the agency action. Further, the Trust did not submit any argument regarding an unconstitutional takings claim in its briefing to the district court.  Additionally, Buell argues that because the deed was determined to be valid, the Trust could not show that a "taking" had actually occurred.

Even if the issue had been properly raised, the validation order does not constitute an unconstitutional taking because the Trust cannot establish that an actual taking occurred. "An inverse condemnation action cannot be maintained unless an actual taking of private property is established." *Covington v. Jefferson Cty.*, 137 Idaho 777, 780, 53 P.3d 828, 831 (2002) (citing *Snyder v. State*, 92 Idaho 175, 179, 438 P.2d 920, 924 (1968)). Here, because the Danforth Deed conveyed valid title to Kootenai County, the Trust cannot establish that any of its property was taken by the Highway District's validation order. Accordingly, the district court's decision does not constitute an unconstitutional taking.

**E.      No party is entitled to attorney fees.**

1.   The Trust is not entitled to attorney fees.

The Trust requests attorney fees pursuant to Idaho Code section 12-117. The Trust contends that the Highway District acted without reasonable basis in fact or law when it validated

a public right-of-way in contradiction of established Idaho law. The Highway District argues that the Trust is not entitled to an award of attorney fees on appeal because the case presented an issue that was a matter of first impression and established legal precedent supported the Highway District's actions.

Idaho Code section 12-117 provides,

> in any proceeding involving as adverse parties a state agency . . . and a person, . . . the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117.

Here, the Trust is not the prevailing party. Accordingly, the Trust is not entitled to attorney fees on appeal.

### 2. Buell is not entitled to attorney fees.

Buell also requests attorney fees on appeal pursuant to Idaho Code section 12-121 and I.A.R. 41. Buell argues that she has been forced to join in defending the Highway District's validation of Road No. 20 to protect her recorded right-of-way access across the Northeast Quarter of Section 34. Buell argues that the Trust's arguments on appeal lack a reasonable basis in fact or law given the ample evidence presented during the validation hearing.

Idaho Code section 12-121 provides, "in any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." This Court has defined "civil action" to include only those cases that were commenced by filing a complaint. *Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 59, 205 P.3d 1192, 1195 (2009) (citation omitted). Further, this Court held that "[a]ttorney fees are not available pursuant to [Idaho Code section] 12–121 on a petition for judicial review because the action is not commenced with the filing of a complaint." *Id.*

This case involves a petition for judicial review of the Highway District's validation order. As a result, Buell is not entitled to attorney fees pursuant to Idaho Code section 12-121.

### IV. CONCLUSION

For the foregoing reasons, we affirm the district court's decision to affirm the Highway District's validation order. We hold that the Highway District had the authority to validate Road

No. 20 under the validation statute despite the missing survey notes, and the validation order does not constitute an unconstitutional taking because the Trust cannot establish an actual taking.

Finally, Buell and the Highway District are the prevailing parties on appeal. Accordingly, costs are awarded pursuant to I.A.R. 40. For the reasons stated, we decline to award attorney fees.

Chief Justice BURDICK, and Justices BRODY, BEVAN and MOELLER **CONCUR.**

Attachment A

