# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41584

| | | |
|---|---|---|
| FLYING "A" RANCH, INC., an Idaho corporation, CLEN ATCHLEY, EMMA ATCHLEY, LAURA PICKARD, CLAY PICKARD, GEORGE TY NEDROW, and DAVID TUK NEDROW, | ) ) ) ) ) ) | Burley, November 2014 Term |
| | ) | 2015 Opinion No. 5 |
| Petitioners-Respondents, | ) ) | Filed: January 23, 2015 |
| v. | ) ) | Stephen Kenyon, Clerk |
| COUNTY COMMISSIONERS OF FREMONT COUNTY, | ) ) ) ) | |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Fremont County. Hon. Gregory W. Moeller, District Judge.

The decision of the district court is affirmed.

Hall Angell Starnes, LLP, Idaho Falls, for appellant. Nathan Starnes argued.

William Lynn Hossner, Esq., St. Anthony, argued for respondents.

_____

HORTON, Justice.

This appeal comes before this Court upon judicial review of an action by the Board of County Commissioners for Fremont County (the Board). The Board adopted an Official Fremont County Road Map (the Map) pursuant to Idaho Code section 40-202. The Map depicted the North Road as a county road. Property owners along the North Road petitioned for judicial review. The district court determined the Board lacked substantial and competent evidence to designate the North Road as a county road and vacated the Board's decision. The Board appealed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1

This case arises from the Board's efforts to prepare an official county road map that complies with Idaho Code section 40-202.[1] Idaho Code section 40-202 requires every county or highway district in Idaho to make an "initial selection of the county highway system" by preparing a map that shows the general location of public highways and rights-of-way in the county and, after public hearing, adopt the map as the official system road map.

Initially, the Board researched the status of various roads, sought written comments, and held three public information hearings in July of 2012 to identify public roads. All roads that were preliminarily identified as public were placed on maps that were available at the meetings and through the Fremont County website. Following the public information meetings, Fremont County Public Works staff reviewed the comments and, if the comments were found to be persuasive, the maps were amended.

On September 27, 2012, another hearing was held to receive public comments on the proposed official highway map. At the hearing, Board Chairman Ron "Skip" Hurt explained, "so tonight it's kind of the culmination of about two years of research that Betty Davis, who works in [the] Public Works Department[,] has done." He also added:

> We feel like we've gone over these [maps] pretty carefully and tonight what we want to hear from you is if there's anything on these maps now that you think is not designated correctly, something that we missed or something that's private which should be public or that should be private.

At this hearing George Ty Nedrow (Ty Nedrow) and David Tuk Nedrow (Tuk Nedrow) stated that the North Road, which was slated to be included on the Map as a public road, should not be included because it was private. Tuk Nedrow stated that the North Road:

> goes through a quarter mile of our property and a quarter mile of Mr. [Atchley]'s and it goes through a half a mile of BLM and then hits the Forest Service and the Forest Service has had that road closed for 25 years and I doubt they're going to open it no matter what the County Commissioners do.

The North Road is also known as the Old Yellowstone Mail Route Road or Snow Creek Road. Ty Nedrow explained how the North Road was historically used as a shortcut on the Old Yellowstone Mail Route, explaining that it was occasionally used by empty stagecoaches traveling from West Yellowstone to Idaho Falls.

---

[1] The legislature amended Title 40 in 2013. This opinion will discuss sections of Title 40 as they appeared during times relevant to this case and, at times, alert the reader to any sections that have been materially altered.

2

During the hearing, the question arose whether the North Road was a United States Revised Statute 2477 (R.S. 2477) road and thus a public right-of-way. In order to ascertain whether certain roads were R.S. 2477 roads, the Board determined that it needed more time to make a decision.

On October 15, 2012, the Board held a meeting where it discussed the public's comments regarding the proposed official highway map and considered what roads should be included on the Map. The Board discussed Ty and Tuk Nedrow's concerns regarding the North Road but decided to designate the North Road as a public road. At the meeting, an unidentified woman informed the Board that she came across "an old Shell Oil map on the internet" that indicated people were being directed down the North Road as far back as 1956. This Shell Oil map is not part of the record. The Board concluded that "any roads [used] prior to [1976] cannot be closed. They fall under this R.S. 2477 . . . if they were ever used as public roads then public domain takes precedence." Apparently based upon this understanding of R.S. 2477, the Board concluded that the North Road had been "ascertained" as a public road, and stated "there is nothing we can do about that."

On October 29, 2012, the Board enacted Ordinance No. 2013-01, which approved the Map, including the North Road. On December 27, 2012, the Board published its findings of fact and conclusions of law.

On November 23, 2012, property owners along the North Road, including Flying "A" Ranch, Inc., Clen Atchley, Emma Atchley, Laura Pickard, Clay Pickard, Ty Nedrow, and Tuk Nedrow (collectively Flying "A"), petitioned for judicial review of the Board's action. Flying "A" asserted that the adoption of Ordinance No. 2013-01 violated Idaho Code sections 40-202 and 40-208. The district court issued its Amended Decision on Review on October 23, 2013, holding that the findings of fact and conclusions of law issued by the Board in support of Ordinance No. 2013-01 violated Idaho Code section 40-202 and 40-208. The district court vacated portions of Ordinance No. 2013-01 that declared the North Road a public road and remanded the matter to the Board to properly consider the status of the North Road. On November 26, 2013, the Board timely appealed the district court's Amended Decision on Review.

## II. STANDARD OF REVIEW

3

"[A]ny final decision or order of the district court on judicial review of an agency decision" is appealable as a matter of right. I.A.R. 11(f). "[W]e are 'procedurally bound to affirm or reverse the decisions of the district court.' " *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). When considering an appeal from a district court acting in an appellate capacity under the Idaho Administrative Procedures Act (IDAPA), this Court "reviews the agency record independently of the district court's decision." *Homestead Farms, Inc. v. Bd. of Comm'rs of Teton Cnty.*, 141 Idaho 855, 858, 119 P.3d 630, 633 (2005).

"[S]ince I.C. § 40-202 is contained in the section of the Code relating to general provisions for the establishment and maintenance of the state and county highway system, including procedures required for abandonment, vacation or validation of highways," the statutory standard of review under Idaho Code section 40-208 applies to Idaho Code section 40-202 decisions. *Homestead Farms*, 141 Idaho at 858, 119 P.3d at 633. Under that standard of review:

> The court may affirm the decision of the commissioners or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the commissioners' findings, inferences, conclusions or decisions are:
> (a) In violation of constitutional or statutory provisions;
> (b) In excess of the statutory authority of the commissioners;
> (c) Made upon unlawful procedure;
> (d) Affected by other error of law;
> (e) Clearly erroneous in view of the reliable, probative and substantial information on the whole record; or
> (f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

I.C. § 40-208(7) (amended 2013).[2]

"Erroneous conclusions of law made by an agency may be corrected on appeal." *Homestead Farms*, 141 Idaho at 859, 119 P.3d at 634. However, "[t]his Court will not substitute its judgment for that of the County as to the weight of the evidence on questions of fact. It will uphold the County's findings unless they are unsupported by substantial competent evidence."

---

[2] On April 2, 2013, the legislature amended Idaho Code section 40-208(7) by deleting this language in its entirety from subsection seven. However, "a statute is not applied retroactively unless there is 'clear legislative intent to that effect.' " *Guzman v. Piercy*, 155 Idaho 928, 937–38, 318 P.3d 918, 927–28 (2014) (quoting *Gailey v. Jerome Cnty.*, 113 Idaho 430, 432, 745 P.2d 1051, 1053 (1987)). Here, the Board entered its order on December 27, 2012, prior to the amendments to Idaho Code section 40-208(7). Since there is no indication the amendments were meant to be retroactive, this Court applies Idaho Code section 40-208(7) as it existed at the time of the Board's decision.

*Sopatyk v. Lemhi Cnty.*, 151 Idaho 809, 813, 264 P.3d 916, 920 (2011) (citation omitted); *see also Galli v. Idaho Cnty.*, 146 Idaho 155, 158, 191 P.3d 233, 236 (2008).

### III. ANALYSIS

The primary issue presented in this appeal is whether there was sufficient evidence before the Board to include the North Road on the Map. We also address whether Flying "A" is entitled to attorney fees under Idaho Code section 12-117. We do not address the claim by Flying "A" that the Board acted in an arbitrary and capricious manner because we find the Board lacked substantial and competent evidence to designate the North Road as a county road.

**A. The Board lacked substantial and competent evidence to determine the North Road occupied the status of an R.S. 2477 road.**

The Board's Findings of Fact and Conclusions of Law state that the identification of roads as R.S. 2477 roads was "supported by substantial and competent evidence submitted at the public hearing and is found to be in the public interest" and that all such roads "are determined by the Fremont County Board of County Commissioners as having been asserted under" R.S. 2477. There are no specific factual findings as to the basis for identifying the North Road as a public road.

The district court found the Board lacked substantial and competent evidence to declare the North Road an R.S. 2477 road because the Board relied upon a Shell Oil map that was not in the record and the Board lacked evidence necessary to make factual findings necessary to support the legal conclusion that the North Road was an R.S. 2477 road. On appeal, the Board argues it had "some basis" to include the North Road because it relied upon the Shell Oil map, Ty Nedrow's statements about the road's historical use, and the work of various Fremont County employees. Flying "A" argues that the Board lacked substantial and competent evidence to include the North Road on its Map because the Shell Oil map and work of Fremont County employees are not in the record and Ty Nedrow's statements are insufficient to satisfy the requirements for an R.S. 2477 determination.

As a preliminary issue, this Court must address the quantum of evidence the Board needed to support its determination that the North Road was an R.S. 2477 road. Seizing upon language found in *Homestead Farms*, the Board argues it only had to support its determination with "some evidence." Flying "A" counters that the determination must be supported by substantial and competent evidence.

5

This Court addressed the legal framework governing a county's decision to place a road on its official highway map under Idaho Code section 40-202 in *Homestead Farms*. That case concerned Teton County's efforts to place roads on its official highway map under Idaho Code section 40-202. *Homestead Farms*, 141 Idaho at 857, 119 P.3d at 632. Teton County commissioners selected a "commercially-produced map of Teton County, and by colored pen, designated various types of roadways throughout the County which they claimed to be public roadways within the meaning of I.C. § 40–202." *Id*. The record, however, contained no factual basis for placing the roads on the map since the Teton County commissioners had not included "at least two earlier maps" that purportedly supported their conclusion. *Id.* at 860–61, 119 P.3d at 635–36. This Court held: "The Commissioners erred in placing these three disputed roads on the purported official map and requiring Homestead and Hall to initiate proceedings to vacate them, absent *clear evidence* these roads were established existing public highways." *Id.* at 860, 119 P.3d at 635 (emphasis added). This Court continued to hold that once someone challenged the "roads' inclusion on the map, the burden shifted to the Commissioners to prove the public status of the disputed roads . . . ." *Id.* "The decision to place roads on the county highway system map should be made only after a determination that a particular roadway occupies the status, in fact, of a public highway or right-of-way." *Id.* at 861, 119 P.3d at 636. This determination "should be dependent upon that roadway having *some basis* through dedication, purchase, prescriptive use or some other accepted means of creating a public highway so there is *some evidentiary support* for the Commissioners' determination to designate a road on the map." *Id.* (emphasis added).

In *Homestead Farms*, we held that the initial placement of a road on a county's official highway map under Idaho Code section 40-202 must have some evidentiary support.[3] *Id.* Once there is an objection to the inclusion of a road on the map, the burden shifts and the Board bears the burden of proving the public status of the disputed road. *Id.* at 860, 119 P.3d at 635. Although our holding in *Homestead Farms* did not unambiguously define the nature of this burden, the use of the phrase "clear evidence" indicates something more than the standard of "some evidence" that the Board urges us to adopt.

---

[3] As previously noted, on April 2, 2013, the legislature amended Idaho Code section 40-202. In doing so, the legislature adopted the standard articulated in *Homestead Farms*. The relevant amendment provides: "Prior to designating a new highway or public right-of-way on the official map, the board of county or highway district commissioners . . . shall have *some basis* indicating dedication, purchase, prescriptive use or other means for the creation of a highway and public right-of-way with evidentiary support." I.C. § 40-202(7) (emphasis added). We do not interpret this amendment as altering the Board's responsibility in the face of an objection to the placement of a road on the map.

*Homestead Farms* was clear in one important aspect: the standard of review imposed by Idaho Code section 40-208 applies to decisions to include roads on the highway system map under Idaho Code section 40-202. *Id.* at 858, 119 P.3d at 633. When considering Idaho Code section 40-208, this Court has repeatedly held that a board's decision is clearly erroneous if it is not supported by substantial and competent evidence. *See Galli*, 146 Idaho at 158, 191 P.3d at 236; *Floyd v. Bd. of Comm'rs of Bonneville Cnty.*, 137 Idaho 718, 725, 52 P.3d 863, 870 (2002). Thus, we continue to adhere to the view that the County bears the burden to produce substantial and competent evidence to support the necessary factual findings needed for the legal determination that a road has public status.[4] In reaching this decision, we note the manifest unfairness of placing the burden of initiating proceedings on property owners to challenge the designation of a road as public in the absence of substantial and competent evidence that the road is, in fact, public.

We next consider whether substantial and competent evidence supported the Board's finding that the North Road was an R.S. 2477 road. There are critical factual findings that must be made to support such a determination, including: (1) the date of the creation of the road; (2) whether the road is situated on private property and, if so, when the property exited the public domain; and (3) if there was either a positive act of acceptance of the right-of-way or compliance with the then-existing statutes governing road creation.

We have discussed the importance of the date of creation of the road, as R.S. 2477 has been repealed.

> The federal statute creating R.S. 2477 roads provided that "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C.A. § 932 (1866) (repealed 1976). While this statute has been repealed, otherwise valid leases, permits, patents and similar rights created under it are valid if they existed before October 21, 1976. Pub.L. 94-579, § 706(a) (1976).

*Farrell v. Bd. of Comm'rs of Lemhi Cnty.*, 138 Idaho 378, 384, 64 P.3d 304, 310 (2002), *overruled on different grounds by City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012);

---

[4] The use of "clear evidence" in *Homestead Farms* was not intended to suggest that the Board was required to find clear and convincing evidence of the status of the road. In *Floyd*, we held that the county bore the burden to prove the public status of a road by a preponderance of the evidence in a validation proceeding. 137 Idaho at 724, 52 P.3d at 869. We can discern no basis for imposing an elevated evidentiary standard relating to highway system maps, which do not have the effect of adjudicating the public status of roads. *Homestead Farms*, 141 Idaho at 859–60, 119 P.3d at 634–35.

*see also Galli v. Idaho Cnty.*, 146 Idaho 155, 158, 191 P.3d 233, 236 (2008). Thus, if the requirements of R.S. 2477 were not satisfied prior to October 21, 1976, then no public right-of-way has been created.

Next, in cases where it is claimed that an R.S. 2477 road crosses private property, the record must establish when the property passed from the public domain into private hands. This is so because, although an R.S. 2477 road must be established on public land, it can exist on private land if previously established on public land. *Galli*, 146 Idaho at 159, 191 P.3d at 237. As we explained:

> No R.S. 2477 road may be established once the land has been removed from the public domain. However, if an R.S. 2477 road is established prior to the land exiting the public domain, regardless if it is officially recognized or not, then that grant remains effective even though the land which the road traverses is now private property.

*Id.* Thus, in cases of claims that an R.S. 2477 road crosses private property, ascertaining the date when the land became private property is essential to resolution of the claim.

Finally, the mechanism of creation of the public road must be established. This is because "[s]tate law governs the manner in which a road on federal property becomes public under R.S. 2477." *Sopatyk v. Lemhi Cnty.*, 151 Idaho 809, 814, 264 P.3d 916, 921 (2011). In Idaho, "an R.S. 2477 right-of-way is either created through [1] a positive act of acceptance by the local government or [2] compliance with the road creation statutes in existence at the time." *Galli*, 146 Idaho at 159, 191 P.3d at 237.

The Board argues there are three pieces of evidence in the record that support its determination that the North Road was an R.S. 2477 road. The first piece of evidence is the audio CD recording of an unidentified woman who informed the Board that she came across "an old Shell Oil map on the internet" that indicated people were being directed down the North Road as far back as 1956. However, the Shell Oil map is not present in the record. This map's absence from the record is similar to the absence of the two maps that supposedly supported the Teton County Commissioners' conclusion in *Homestead Farms*. In *Homestead Farms*, this Court held that the matter must be remanded because the record was "devoid" of evidence supporting a conclusion that the challenged roads were public roads. 141 Idaho at 861, 119 P.3d at 636.

The Board next points to evidence of the work of county employees as supporting its determination. However, although the Board alleges it relied on "months of research" and the "substantial work of the Fremont County Public Works Department," this work is also absent

from the record and, therefore, not available for review of the propriety of the North Road designation.

Finally, the Board points to Ty Nedrow's statements that the North Road was historically used as a shortcut on the Old Yellowstone Mail Route. He stated:

> I rode that country for many, many years with my grandfather. His older brother furnished the horses to the stagecoach to use, but that road was never used unless it was an empty stage coming back from West Yellowstone. It was a shortcut. They couldn't pull the hills going up through there with a load on, nor was it safe to come down with passengers on the stagecoach. Grandpa said that the only time that they used that is if they [were] coming back from the park empty and had a spare wheel. There are many lava rock grates they went over and they broke more wheels. They usually couldn't even use that road until August because of the swamp up there. They called it Hound Creek back then, nowadays they call it Snow Creek, but there's a crossing when you cross Snow Creek that is just a swamp until about August they couldn't even use that road, so many people are misinformed saying that's the mail route. It was just a shortcut for somebody that wanted to get to Idaho Falls in a hurry.

This statement fails to address the critical facts that must be ascertained to determine whether the North Road is an R.S. 2477 road. Although the reference to stagecoaches would permit the legitimate inference that the road was in use prior to October 21, 1976, it does not address whether the land the North Road crosses was private or public domain when it was used as a shortcut on the Old Yellowstone Mail Route. This is problematic because "[n]o R.S. 2477 road may be established once the land has been removed from the public domain." *Galli*, 146 Idaho at 159, 191 P.3d at 237. Moreover, in Idaho, "an R.S. 2477 right-of-way is either created through [1] a positive act of acceptance by the local government or [2] compliance with the road creation statutes in existence at the time." *Id.* Mr. Nedrow's statements do not address whether the North Road became an R.S. 2477 road in either manner.

Because the record does not contain evidence addressing critical aspects of the R.S. 2477 analysis, the Board lacked substantial and competent evidence to support its determination that the North Road was an R.S. 2477 road. Therefore, we affirm the decision of the district court.

**B. Flying "A" is entitled to attorney fees pursuant to Idaho Code section 12-117.**

Flying "A" requests attorney fees on appeal under Idaho Code section 12-117. Under the statute, this Court "shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law." "The dual purpose of I.C. § 12–117 is to (1) deter groundless or arbitrary

9

agency action; and (2) to provide 'a remedy for persons who have borne an unfair and unjustified financial burden attempting to correct mistakes agencies should never have made.' " *Fuchs v. Idaho State Police, Alcohol Beverage Control*, 153 Idaho 114, 117, 279 P.3d 100, 103 (2012) (quoting *Ralph Naylor Farms, LLC v. Latah Cnty.*, 144 Idaho 806, 809, 172 P.3d 1081, 1084 (2007)). Given the complete silence of the record as to the facts that might support the Board's determination that the North Road was an R.S. 2477 road, we find that the Board's appeal was without a reasonable basis in fact or law and Flying "A" has been forced to bear an unfair and unjustified financial burden to defend the district court's decision. Thus, we award Flying "A" attorney fees on appeal.

## IV. CONCLUSION

The decision of the district court is affirmed. The district court shall remand this matter to the Board with instructions to properly consider the status of the North Road and adopt a new county highway map consistent with this opinion. We award Flying "A" attorney fees and costs on appeal.

Justices EISMANN, J. JONES and Justice Pro Tem WALTERS, **CONCUR**.

Chief Justice BURDICK Dissents from part III.B without opinion.