# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51313-2023

| | |
|---|---|
| ROBERT JUTILA, an individual; PAUL LOUTZENHISER, an individual; and NORTH IDAHO TRAIL BLAZERS INCORPORATED, an Idaho nonprofit corporation,<br><br>   Petitioners-Appellants,<br><br>v.<br><br>COUNTY OF SHOSHONE and SHOSHONE COUNTY BOARD OF COMMISSIONERS, a political subdivision of the State of Idaho,<br><br>   Respondents-Respondents on Appeal. | Moscow, April 2025 Term<br><br>Opinion filed: June 25, 2025<br><br>Melanie Gagnepain, Clerk |

Appeal from the District Court of the First Judicial District of the State of Idaho, Shoshone County. Susie Jensen, District Judge.

The decision of the district court is affirmed.

Sawtooth Law Offices, PLLC, Boise, for Appellants. David P. Claiborne argued.

Shoshone County Prosecuting Attorney, Wallace; and Givens Pursley LLP, Boise, for Respondents. Benjamin J. Allen argued.

---

ZAHN, Justice.

This case arises from the decision by the Shoshone County Board of Commissioners ("the Board") denying a petition to validate a portion of West Fork Pine Creek Road ("the Road"). Robert Jutila, Paul Loutzenhiser, and North Idaho Trail Blazers Incorporated ("collectively Petitioners") filed a petition for judicial review in district court, arguing that the Board erred in denying the petition for validation. The district court affirmed. Petitioners appealed the district court's decision, arguing that the district court erred in concluding that (1) Board meeting minutes from 1909 did not create a public road; (2) Petitioners failed to establish that the Road was a public

road through public use and public maintenance; and (3) the Board did not err when it determined that validating the Road was not in the public interest.

Validating a public road requires two findings: that a public road was created, and that validation is in the public interest. While we conclude that the Board erred in determining that the 1909 meeting minutes did not establish a public road, we find no error in the Board's determination that validation of the Road was not in the public interest. As a result, the Board properly determined that it could not make both findings required to validate the Road and we affirm the district court's decision affirming the Board's denial of the petition for validation.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Road at issue in this appeal is unpaved. It continues past and extends beyond a public section of road that is maintained by Shoshone County ("the County"). The Road runs across private property and then crosses into public land under the jurisdiction of the federal Bureau of Land Management ("the BLM"). Loutzenhiser and other recreationalists use the Road to access federal public lands, specifically an area nicknamed "the Roller Coaster," that is located on BLM land. The Roller Coaster is a popular area for driving jeeps and off-road vehicles. North Idaho Trail Blazers Incorporated ("NITB") is an off-roading recreation group that includes Jutila, Loutzenhiser, and others who are in favor of validating the Road.

Following disputes between local landowners and recreationalists over their use of the Road, Loutzenhiser emailed the Board to request that it validate the Road. Because the Board treated this email as a petition to validate the Road, it will be referred to in this opinion as "the Petition." Upon receiving the Petition, the Board initiated validation proceedings pursuant to Idaho Code section 40-203A and held a public hearing on the Petition. Loutzenhiser was unable to attend, so Jutila presented the Petition on Loutzenhiser's behalf. Jutila discussed the various maps, surveys, and other recorded documents that supported validating the Road.

Other community members attended the hearing as well. Motorized recreationalists urged the Board to validate the Road so it could be used to access BLM land for recreation. Those opposed included the private property owners whose land the Road crossed, who urged the Board to deny the Petition. They raised concerns about environmental impacts, increased noise and pollution, safety, and argued that the "Roller Coaster" was created illegally without the proper permission or environmental review by the BLM. The Board concluded the hearing without taking a vote on the Petition.

At a subsequent public hearing, the Board discussed the Petition and unanimously denied it. Board members discussed concerns that there was no evidence that the Road was a public road or that the County had maintained the Road, that validation would result in costs to taxpayers to survey and improve the Road, and that a different public road could be used to access the Roller Coaster. The Board later issued a written decision formally denying the Petition.

Jutila and NITB subsequently joined Loutzenhiser as petitioners, and Petitioners moved the Board to rehear the Petition. The Board held another public hearing, at which Petitioners presented meeting minutes from a 1909 Board meeting in which the Board at the time issued an order declaring the Road as a public highway. Petitioners argued that the meeting minutes established that the Road has been declared a public highway and remained public at that time. Alternatively, Petitioners argued that the Road was established as a public road through public use and maintenance at public expense. Those opposing the Petition argued that validating the Road would result in environmental damage, pollution, wildfire danger, dangerous driving, cost to taxpayers, and negative impacts on private property owners.

The Board again unanimously denied the Petition. At the hearing, the Board expressed it was denying the Petition for reasons similar to those expressed at the prior hearing. The Board later issued a written "Findings of Fact, Conclusions and Decision" explaining that the evidence presented was not sufficient to establish that the Road was a public road and that it was not in the public interest to validate the Road.

Petitioners filed a petition for judicial review in district court, seeking to reverse the Board's decision denying the Petition. Petitioners argued that the Board's decision was not supported by substantial and competent evidence and was not in accordance with Idaho's road statutes. Petitioners contended that the Road was validly declared a public highway by the Board in 1909, the Road was historically used by the public and maintained at the public expense, and the Board erred by concluding that validating the Road is not in the public interest. The district court issued a written decision affirming the Board's decision denying the Petition on the basis that substantial and competent evidence in the record supported the Board's conclusions on all three issues raised in the judicial review proceeding. Petitioners timely appealed.

## II.   ISSUES ON APPEAL

1. Whether the district court erred in affirming the Board's decision that the Road was not a public road.

2. Whether the district court erred in affirming the Board's decision that validation of the Road was not in the public interest.

3. Whether either party is entitled to an award of attorney fees on appeal.

## III.    STANDARDS OF REVIEW

This Court reviews a board's action on a validation petition independent of the district court's decision. *Richel Fam. Tr. by Sheldon v. Worley Highway Dist.*, 167 Idaho 189, 195, 468 P.3d 775, 781 (2020). "However, we are procedurally bound to affirm or reverse the decisions of the district court." *Id.* (citation modified) (quoting *Flying "A" Ranch, Inc. v. Cnty. Comm'rs of Fremont Cnty.*, 157 Idaho 937, 939–40, 342 P.3d 649, 651–52 (2015)). "[T]his Court defers to the factual findings made below by either the [board] or district court unless they are unsupported by substantial and competent evidence." *Id.* "However, we freely review questions of law . . . ." *Galvin v. Canyon Highway Dist. No. 4*, 134 Idaho 576, 578, 6 P.3d 826, 828 (2000).

## IV.    ANALYSIS

Validation proceedings are governed by Idaho Code section 40-203A. Section 40-203A(3) provides that "[u]pon completion of the [validation] proceedings, the [Board] shall determine whether validation of the highway or public right-of-way is in the public interest and shall enter an order validating the highway or public right-of-way as public or declaring it not to be public." I.C. § 203A(3). In *Hill v. Blaine County*, this Court held that in order to grant a petition to validate a road, "the plain language of section 40-203A(3) require[s] the Board to find both that [a road] was a public road *and* that validating [a road] was in the public interest[.]" 173 Idaho 856, 866, 550 P.3d 264, 274 (2024).

In this case, the Board determined that Petitioners failed to establish either element. Put differently, the Board concluded that Petitioners failed to establish that the Road is a public road or that validation is in the public interest. The district court affirmed the Board's decision on both elements and Petitioners argue the district court erred in affirming the Board on both elements. Petitioners appealed.

On appeal, counsel for Petitioners conceded at oral argument that, under *Hill*, if we do not reverse the district court's decision on both elements, then we must affirm the district court's decision affirming the Board. For the reasons discussed below, we conclude that, while the district

4

court erred in affirming the Board on the first element, it did not err in affirming the Board on the second. As a result, we affirm the district court's decision.

**A. The district court erred in affirming the Board's conclusion that Petitioners failed to establish that the Road was a public road.**

In deciding the validation Petition, the Board was first required to address whether the Road was a public road. *See Hill*, 173 Idaho at 866, 550 P.3d at 274. Petitioners put forth two arguments below on this point. The first was that the Board made the Road a public highway at a 1909 meeting. The second was that the Road became a public road through public use and maintenance at public expense. We hold that the evidence established that the Board declared the Road a public highway in 1909, and the district court erred in affirming the Board's conclusion that Petitioners failed to carry their burden on this first element.

At the public hearing on Petitioners' request for rehearing on the Petition, Petitioners presented the Board with meeting minutes from two Board meetings in 1909 as evidence that the Board declared the Road to be a public highway in 1909. The first meeting minutes are dated April 1909 and indicate that members of the public filed a petition with the Board for the establishment of "a public highway" that included the Road. The April 1909 meeting minutes indicate that the petition was "examined and approved" and that three viewers were appointed to "lay out and survey said proposed road and to report to this Board thereon."

The second meeting minutes are dated July 1909 and indicate that the Board "examined and approved" the report of the appointed viewers. The July 1909 minutes then state that "it was *ordered* that a wagon road commencing at [an area including the Road] . . . *is hereby declared to be a public highway.*" (Emphasis added.) The Board ordered that brush and timber clogging a stream near the Road be cleared because it posed a danger to the Road.

When denying the Petition at the public hearing on the petition for rehearing, the Board did not address the 1909 meeting minutes. And while its written decision denying the Petition listed the 1909 meeting minutes as being considered, the Board's written decision similarly failed to address why the meeting minutes failed to establish that the Board had declared the Road a public highway.

In their petition for judicial review, Petitioners challenged the Board's decision on this point. The Board responded that the meeting minutes were insufficient because, in 1909, an Idaho statute defined "recorded and worked highways" to require some form of recording to establish a public highway:

5

> Roads laid out and *recorded as highways, by order of the board of commissioners,* and all roads used as such for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners, are highways.

Idaho Rev. Code § 875 (1908) (emphasis added). The Board argued that the word "recorded" as used in this statute required the Board to record the public highway with the county recorder or in the county road book. The Board asserted that Petitioners presented no evidence that the Board "recorded" the Road and, in the absence of that action, the Road never became a public highway.

In its written decision affirming the Board, the district court initially grappled with the question of what "recorded" meant in the context of the 1909 statute. However, the district court never reached a conclusion on this question. Instead, it concluded that the question of whether the Board created a public road in 1909 was a question of fact and that caselaw required that it defer to the Board on this point if the Board's decision was supported by substantial and competent evidence. It concluded that the Board's decision was supported by substantial and competent evidence and affirmed the Board.

In reviewing the district court's decision, we first conclude that the district court erred in treating this question as an issue of fact. The determination of whether the Road attained the status of a "public road" for purposes of the validation inquiry is a question of law, not one of fact. *See Flying "A" Ranch, Inc. v. Cnty. Comm'rs of Fremont Cnty.*, 157 Idaho 937, 942, 342 P.3d 649, 654 (2015) (describing the public status of a road as a "legal determination"). Whether the Road was declared a public road in 1909 concerns the legal status of the road and is answered by examining Idaho statutes in 1909 to determine what legal formalities had to be followed to establish a public road. This is a question of statutory interpretation, which is a question of law. *Hill*, 173 Idaho at 862, 550 P.3d at 270 (quoting *Chester v. Wild Idaho Adventures RV Park, LLC*, 171 Idaho 212, 222, 519 P.3d 1152, 1162 (2022)). The district court erred when it deferred to the Board on this question. We therefore turn to Idaho road law as it existed in 1909 to determine whether Petitioners' evidence established the Board had previously declared the Road to be a public highway.

In 1909, Idaho's statutes defined highways as "roads, streets or alleys, and bridges, laid out or erected by the public, or if laid out or erected by others, dedicated or abandoned to the public." Idaho Rev. Codes § 874 (1908). At that time, one method to create a public road was for ten inhabitants of a road district to petition the board of county commissioners for a road to be created,

6

altered, or abandoned. Idaho Rev. Codes § 916 (1908). Upon that petition, the board would appoint three "viewers" to view and survey the road and submit an estimated cost for the change, alteration, or opening of the road. Idaho Rev. Codes § 919 (1908). These viewers would complete and send a report to the board. *See* Idaho Rev. Codes § 921 (1908). A public hearing would be held on the opening of the road. Idaho Rev. Codes § 924. If the board approved the report and there were no non-consenting landowners to the road, "the road must, by order, be declared a public highway." Idaho Rev. Codes § 925 (1908).

The Board relies on the statutory definition of "recorded and worked highways" in Idaho Revised Codes section 875 (1908) to argue that an additional step was required to create a public road: it needed to be formally recorded in a county road book or with the county recorder. We disagree. The road creation process is described in the prior paragraph in title 7, chapter 2, article 6 of the 1908 Idaho Code, entitled "Laying Out, Altering and Discontinuing Highways." It plainly and unambiguously sets out a process for creating a public road. Those statutes do not condition the creation of a public road on its recording with the county recorder or its recordation in the county road book. The Board's argument to the contrary does not acknowledge or address this part of the Idaho Code. Nor does the Board cite any legal authority in support of its argument that we should rely on a definitional code section in article 7, chapter 2, article 1 of the 1908 Idaho Code to add a recording requirement to the road creation process described in title 7, chapter 2, article 6.

There are other Idaho Code sections from this timeframe that speak to the recording of public roads and board orders. Idaho Revised Codes section 877 (1908), titled "Record of Highway Proceedings," required the clerk of the board to "keep a book in which must be recorded separately all proceedings of the board relative to each road district, including orders laying out, altering, and opening roads; and in a separate book a description of each road district, its overseers, its roads, highways, contracts, and all other matters pertaining thereto." Idaho Rev. Codes § 877 (1908). However, nothing in this statute suggested that the clerk's recording of the highway in the highway book was a necessary prerequisite for the creation of a public highway.

Idaho Revised Codes section 882 (1908), titled "Duties of Commissioners," required that "[t]he board of county commissioners, by proper ordinances, must . . . [c]ause to be surveyed, viewed, laid out, *recorded*, opened and worked, such highways as are necessary for public convenience, as in this chapter provided[.]" Idaho Rev. Codes § 882(2) (1908) (emphasis added).

7

Again, nothing in the language of this section indicates that formal recordation in the county road book was a necessary prerequisite to the creation of a public highway. In other words, while this section imposed a requirement on the county boards of commissioners to record public roads, nothing in the section indicated that a road was invalid if it was not recorded.

Lastly, Idaho Revised Codes section 1911 (1908) sets forth the duties of the clerk of a board, which included "[r]ecord[ing] all the proceedings of the board." Idaho Rev. Codes § 1911(1) (1908). Idaho Revised Codes section 1912, titled "Books to Be Kept," required that "[t]he board must cause to be kept: 1. A 'Minute Book' in which must be recorded all orders and decisions made by them, and the daily proceedings had at all regular and special meetings" as well as "3. A 'Road Book', containing all proceedings and adjudications relating to the establishment, maintenance, charge, and discontinuance of roads . . . ." Idaho Rev. Codes § 1912(1), (3) (1908). Again, nothing in the language of these statutes indicates that recording a road was a necessary prerequisite to its creation.

With these statutes in mind, we turn to the evidence that Petitioners presented to the Board concerning the establishment of a public road. This Court freely reviews whether the evidence is sufficient to satisfy the legal requirements for a public highway. *See Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 365, 179 P.3d 323, 328 (2008) (citation omitted). The 1909 meeting minutes indicate that the Board created a public highway in 1909 that included the Road at issue in this case. The public petitioned the Board to create a public road, and the Board then followed the applicable statutory process for the creation of a public road. The Board ordered viewers to survey the Road, considered the viewers' report issued and approved it, ordered the Road be declared a public highway, and ordered that the Road be maintained at county expense. This is all that was required by the applicable statutes at the time. We therefore conclude that Petitioners' evidence was sufficient to establish that the Board declared the Road to be a public highway in 1909. The Board presented no evidence that the Road had been abandoned since then. For these reasons, we hold that the Board erred in concluding that Petitioners failed to establish the first element of the validation Petition, and we reverse the district court's decision affirming the Board's determination on this point.

We acknowledge the Board's policy argument that formal recording of a public highway in a road book or with the county recorder should be required to put the public on notice of whether a road is a public highway or not. The Board argues that, without this formal recording, those

seeking to determine the status of a road would be required to wade through all the meeting minutes and other documentation that could indicate that a board created a public highway. We agree that simply turning to the county road book to determine the public status of a road is more convenient and efficient. However, the applicable statutes of the time did not require this as part of the process to create a public highway and we do not have the authority to retroactively amend the statutes to add this requirement.

Our decision today resolves the first element of the validation inquiry in Petitioners' favor. Because we resolve the first element of the validation inquiry on this basis, we do not need to address Petitioners' alternative argument that the Road became a public road through public use and maintenance at public expense. We now turn to Petitioners' argument on the second element of the validation inquiry.

**B. The district court did not err in affirming the Board's decision that it was not in the public interest to validate the Road.**

In its initial decision, the Board discussed several factors related to the public interest before denying the Petition. The Board noted that a different road provided access to the BLM land six months of the year and that the County was interested in making that road accessible during the entire year. The Board raised concerns that validating the Road would cost the County approximately $15,000 to survey the road and to construct two or three culverts for water drainage. The Board also discussed that validating the Road would require the County to perform ongoing maintenance and repairs that would burden taxpayers. It noted the concerns of the private property owners that the Road crossed. The Board also acknowledged its general philosophy of keeping open roads that provide access to public lands. In its written decision, the Board listed all the evidence considered in denying the validation Petition.

When denying the petition on rehearing, the Board's discussion was brief but again reiterated several reasons for declining to validate the Road. The Board discussed that surveying the Road would be costly but that a survey was necessary because the Road had been washed out by a flood. The Board also repeated that NITB has access to the public land through alternative routes.

On judicial review, Petitioners argued that the Board's determination was unsupported by the record and constituted an abuse of discretion. The district court concluded otherwise and affirmed the Board's determination. The district court determined that the Board recognized that the public interest determination was within its discretion and that the record demonstrated that

the Board recognized it must balance the public's interest in access to public lands with the interests of private landowners and additional expenses to taxpayers. The district court noted that the Board considered the availability of alternative access points to the public land and the costs of creating and maintaining the Road, such as surveying the Road and putting in culverts for water control, as factors in its decision to not validate the Road. The district court concluded that the Board's decision that validation was not in the public interest was both an appropriate exercise of discretion and supported by substantial and competent evidence.

On appeal, Petitioners argue that the Board erred in its public interest determination. Petitioners argue that nowhere in the transcript does the Board specifically discuss whether validation of the Road was in the public interest. Petitioners also contend that the County is not required to spend funds to survey and maintain the Road if validated, that the alternative road is seasonal and limited to non-motorized travel only, and that the Board failed to consider the public benefits to validating the Road.

The Board argues that it did not abuse its discretion, and its decision was based on substantial and competent evidence in the record. It argues that its concerns that went into the public interest determination include concerns over public safety, noise, confrontations, inadequate law enforcement, potential environmental damage, fire risk, and the cost to taxpayers, which was all laid out in the record. The Board argues that, even though it is not required to survey and maintain the Road, as a practical matter, a survey would be needed to determine the location of the Road after the last flood and occasional maintenance would be required, all at the expense of the taxpayer.

"[T]he public interest element is a separate element of a validation decision." *Hill v. Blaine County*, 173 Idaho 856, 866, 550 P.3d 264, 274 (2024). "[T]he public-interest finding is a discretionary determination rather than a factual finding." *Palmer v. E. Side Highway Dist.*, 167 Idaho 813, 821, 477 P.3d 248, 256 (2020). This Court will uphold the Board's discretionary decision unless the Board abused its discretion. *Id.* To determine whether the Board abused its discretion, this Court analyzes whether the Board "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

10

Our review of the record reveals no abuse of discretion in the determination that validation was not in the public interest. At the initial public hearing on the validation Petition, the Board received substantial evidence and testimony regarding whether validation was in the public interest. Those in favor of the Road presented testimony that the Road has been used for recreation, such as fishing and motorized recreation, and that the Roller Coaster was created through a partnership with the BLM. Those opposed presented testimony on a variety of concerns, including that the Roller Coaster was created illegally without proper permitting or environmental review in a non-motorized area of BLM land, increased costs to taxpayers resulting predominately from use by non-residents for recreation, lack of emergency access, increased trash, and potential lawsuits with the federal government. They also testified concerning the negative impacts of the Road's use on the environment, including damage caused by driving through creek beds, adverse impacts on trout spawning waters, and contamination of drinking water. The private landowners whose property the road crossed also testified about concerns resulting from recreationalists crossing their private property.

During the second public hearing on the petition for rehearing, the Board received additional public testimony and evidence. Proponents of validation testified that the Road is an important artery for public recreation. Opponents' testimony was largely similar to that offered at the previous hearing, but also addressed additional concerns that the County could be liable for injuries that occurred on the Road, disturbance of wildlife and fish, danger to young children and pets due to increased traffic, noise pollution, wildfire hazards, polluted waterways and drinking water, lack of law enforcement, disappearance of game animals, and concerns about litigation with environmental groups.

Petitioners correctly note that the Board did not include explicit findings in its written decision or comments at the public hearings explaining why it concluded that validating the Road was not in the public interest. However, the public interest determination is a discretionary decision by the Board, and we will uphold that decision if the Board's "reasoning is obvious from the record, which supports the determination that its decision was made by an exercise of reason." *Palmer*, 167 Idaho at 821, 477 P.3d at 256. In *Palmer*, we upheld a highway district's public interest determination because, although the highway district commissioners did not have a "lengthy discussion, the commissioners' reasoning may be gleaned from the transcript" and "[t]he commissioners addressed the facts and arguments presented to them." *Id.* We upheld the highway

district's determination that, "from a cost-benefit perspective, the cost clearly outweighed the public benefit that would be attained from building the [r]oad." *Id.*

We conclude that, similar to the circumstances in *Palmer*, the Board's statements and written decisions here, coupled with the testimony received at two public hearings, are sufficient to show that the Board's decision was made by an exercise of reason. The testimony received by the Board was overwhelmingly against validating the Road and the public raised numerous financial, environmental, and safety concerns. The Board demonstrated its understanding that it was making a discretionary decision and exhibited an exercise of reason when it considered the public testimony and acknowledged that, while it was generally against closing roads that provided access to public lands, the costs to the taxpayers did not justify validating the Road. It acted within the outer boundaries of its discretion and consistently with the applicable legal standards when, after weighing the evidence received, it determined that it was not in the public interest to validate the Road. We therefore affirm the district court's decision affirming the Board's determination on this element.

Petitioners argue that the Board's concern that paying for a survey would be expensive to taxpayers is unfounded because surveying a new Road is optional by statute. We disagree. As the Board explained, the Road had been washed out by a flood, so its exact location was unknown. As a practical matter, the Board would need to expend funds to survey and identify the location of the Road so it is clear to the public, including the road users, what has been validated and where they may travel.

Petitioners argue in their appellate briefing that if we reverse the district court's decision on the public road element, then we should remand this case for further proceedings because the Board's public interest determination was necessarily based on the erroneous conclusion that the Road was not a public road. As discussed above, we agree with Petitioners that the Board declared the Road a public highway in 1909. However, our review of the record does not indicate that the Board's public interest determination was based on, or was dependent on, a belief that the Road was not a public road. While two of the Commissioners commented that there was no record of the road being recorded, these comments were in relation to the Board's determination that Petitioners failed to establish the first element: that the Road was a public road.

At oral argument, Petitioners' counsel conceded that, pursuant to our decision in *Hill*, if we reversed the district court's decision concerning the public road element, but affirmed its

decision on the public interest element, then we are required to affirm the district court's decision. "[T]he plain language of section 40-203A(3) required the Board to find both that [the Road] was a public road *and* that validating [the Road] was in the public interest before it could validate [the Road.]" *Hill*, 173 Idaho at 856, 550 P.3d at 269. Both elements are not met here because we have affirmed the district court's decision affirming the Board's decision on the public interest element. As a result, we affirm the district court's decision affirming the Board's decision denying the validation Petition.

**C. Neither party is entitled to an award of attorney fees on appeal.**

Both the Board and Petitioners request attorney fees on appeal pursuant to Idaho Code section 12-117(1). Idaho Code section 12-117(1) provides that, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the prevailing party shall be awarded attorney fees if the nonprevailing party acted without a reasonable basis in fact or law. I.C. § 12-117(1). Petitioners and the Board have each prevailed in part. We therefore conclude there is no overall prevailing party. As a result, neither is entitled to fees under section 12-117(1).

## V.    CONCLUSION

For the reasons discussed herein, we affirm the district court's decision affirming the Board's decision denying the validation Petition. Neither party is awarded costs on appeal.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.